CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
December 15, 2025
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| PATRICIA THURSTON, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:25-cv-00217 |
| ) | |
| BANKUNITED, N.A., ) | By:  Elizabeth K. Dillon |
|     Defendant. ) | Chief United States District Judge |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Patricia Thurston brings this action alleging a claim of libel/defamation per se against defendant BankUnited, N.A. ("BankUnited"), arising from events related to the sale of property she owned. Pending before the court is BankUnited's motion to dismiss the complaint with prejudice for failure to state a claim. (Dkt. No. 6.) The matter has been fully briefed and is now ripe for decision. Neither party has requested a hearing, and the court finds that a hearing is unnecessary to resolve the motion. *See* W.D. Va. Civ. R. 11(b). For the reasons stated herein, the court will deny BankUnited's motion to dismiss.

I. BACKGROUND[1]

Thurston sold real property that she owned in Roanoke County, Virginia, and Pike Title and Escrow, LLC ("Pike Title") managed the closing. (Compl. ¶ 5.) Pike Title prepared a settlement statement reflecting that Thurston would receive $66,484.74 from the sale of her property. (*Id.* ¶ 6.) She provided wiring instructions for her Truist Bank account, and Pike Title sent those instructions to BankUnited, the bank that held Pike Title's escrow account. (*Id.* ¶¶ 3–8.) BankUnited followed the instructions and successfully wired the funds to Thurston's account

---

[1] The factual allegations in this section are drawn from Thurston's complaint and exhibits attached thereto. (Compl., Dkt. No. 1-2). This case was originally brought in the Circuit Court for Roanoke County, Virginia, but was removed by BankUnited pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (Dkt. No. 1.)

on January 12, 2024.  (*Id.* ¶ 9, Ex. A.)  Everything appeared to be in order.

Then, on January 22, 2024, BankUnited published a service message to Truist Bank requesting that the wired funds be returned, stating:

> AMT $66,484.74 URGENT. PLS RETURN FUNDS PER REMITTER REQUEST. DUE TO CONFIRMED FRAUD – WIRE SENT AS A RESULT OF A REAL ESTATE SCAM. PLEASE ASSIST WITH RETURNING FUNDS ASAP AND QUOTE OUT RED BUI–16729 REGARDS. TYLER D

(*Id.* ¶¶ 10–11, Ex. B.)  BankUnited repeated this accusation in an email to Truist Bank the same day. (Compl. ¶ 12.)  On January 29, 2024, Truist Bank emailed BankUnited questioning the fraud allegation, and BankUnited responded that Thurston falsified documents, specifically an Owner's Affidavit (hereafter "affidavit") stating that no outstanding liens or loans remained on the property.  (*Id.* ¶ 13, Ex. D.)

Thurston contends that the Deed of Trust that BankUnited claimed had not been released from the property had in fact been fully satisfied on January 9, 2024, before the closing on the sale of her property.  (*Id.* ¶ 15.)  She alleges that Pike Title itself prepared the Certificate of Satisfaction for the prior Deed of Trust and properly recorded it in the Clerk's Office of the County of Roanoke.  Pike Title charged Thurston $46.00 for recordation.  (*Id.* ¶¶ 16–17.) Therefore, Thurston contends that there were no outstanding Deeds of Trust encumbering the property at the time of the closing or at the time that BankUnited made the alleged defamatory statements.  (*Id.* ¶ 18.)

Nevertheless, BankUnited told Truist Bank that Thurston committed real estate wire fraud—a serious federal crime which the complaint identifies as an accusation of Thurston violating 18 U.S.C. § 1343.  (Compl. ¶¶ 22–23.)  Thurston alleges that BankUnited either knew its statements regarding fraud "were false, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the truth."  (*Id.* ¶ 27.)  She contends that the false statements

2

accused her of committing "a crime involving moral turpitude for which, if true, she could have been indicted and punished." (*Id.* ¶ 28.) She alleges that these statements by BankUnited to Truist Bank "were false and defamatory statements which were made with the intent of harming the reputation of Ms. Thurston so as to deter Truist Bank from associating or dealing with Ms. Thurston and to cause Truist Bank to deny Ms. Thurston access to her funds." (*Id.* ¶ 14.)

Thurston contends that these false statements caused her irreparable harm, accusing her of criminal behavior she did not commit. As a result, she brings a claim for libel/defamation per se against BankUnited, seeking compensatory and punitive damages. (Compl. ¶ 29.)

## II. LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's allegations must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). This standard "requires the plaintiff to articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief, i.e., the 'plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). The plausibility standard requires more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In determining whether the plaintiff has met this plausibility standard, the court must accept as true all well-pleaded facts in the complaint and any documents incorporated into or attached to it. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), but it "need

3

not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments.'" *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

### III. DISCUSSION

In its motion to dismiss, BankUnited argues that Thurston's libel/defamation per se claim fails because the alleged defamatory statements were true. It contends that the documents referenced in the complaint establish that Thurston signed an affidavit on January 11, 2024, stating that no loans or liens encumbered the property. BankUnited further asserts that the Certificate of Satisfaction releasing the Deed of Trust was not recorded until January 12, 2024, and therefore had not legally released the lien at the time Thurston signed the affidavit. Thus, according to BankUnited, Thurston's affidavit was false, making BankUnited's statement—that Thompson falsified the Owner's Affidavit indicating there was no additional liens or loans to be paid on the property—true. On that basis, BankUnited claims it did not make any false statement—an essential element of defamation—requiring dismissal of Thurston's libel/defamation per se claim. (*See* Br. Supp. Mot. to Dismiss, Dkt. No. 7.)

Thurston has filed a response in opposition, arguing that BankUnited's reliance on the affidavit is insufficient to show that she committed wire fraud.[2] She further asserts that the

---

[2] In her response filing, Thurston included additional details regarding the sale of her property. However, because these facts are neither alleged in her complaint nor included in its exhibits, the court does not consider them in evaluating the motion to dismiss. *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing . . . .").

Furthermore, Thurston argues that the court should not consider the affidavit, claiming it was mentioned only once in the complaint and is not integral to her allegations. (Br. Opp'n Mot. to Dismiss 6–7, Dkt. No. 10.) The court disagrees. The affidavit is central to Thurston's defamation claim, as it forms the basis for BankUnited's alleged statements asserting that she committed real estate wire fraud. Thurston does not dispute the affidavit's authenticity, and because it is integral to the complaint, the court may properly consider it in evaluating BankUnited's motion to dismiss. *See Sullivan v. City of Frederick*, 738 Fed. App'x. 198, 199 (4th Cir. 2018) ("[U]nder Rule 12(b)(6) . . . documents submitted by a movant that were not attached to or expressly incorporated into a complaint that are integral to the complaint and authentic are considered.").

4

Certificate of Satisfaction showed the lien was paid, that she reasonably relied on it despite the lack of recordation, and that nothing in the affidavit or the closing process establishes the elements of wire fraud. (Br. Opp'n Mot. to Dismiss 6–9.) BankUnited submitted a reply brief thereafter. (Reply Br. Supp. Mot. to Dismiss, Dkt. No. 14.)

"In recognition of the importance of safeguarding an individual's basic entitlement to the uninterrupted enjoyment of his or her reputation, Virginia law allows a person who has been the subject of libel or slander to bring a cause of action for defamation." *Jackson v. Hartig*, 645 S.E.2d 303, 308 (Va. 2007) (citing *Tronfeld v. Nationwide Mut. Ins. Co.*, 636 S.E.2d 447, 449 (Va. 2006)). Under Virginia law, the requisite elements of a defamation claim are "(1) publication of (2) an actionable statement with (3) the requisite intent." *Lokhova v. Halper*, 995 F.3d 134, 145 (4th Cir. 2021) (internal citations omitted). BankUnited's motion to dismiss takes issue with element two, arguing that none of the alleged statements that Thurston identifies in her complaint are actionable because the statements are not false. Accordingly, the court addresses the second element of the defamation claim below.

At common law, defamatory words "which impute to a person the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished[,]" are actionable per se. *Tronfeld v. Nationwide Mut. Ins. Co.*, 636 S.E.2d 447, 449 (Va. 2006) (citing *Fleming v. Moore*, 275 S.E.2d 632, 635 (Va. 1981)). Here, Thurston alleges that BankUnited made three separate statements to Truist Bank that were false. First, she points to BankUnited's service message to Truist Bank requesting the return of $66,484.74 due to "confirmed fraud" as a result of a "real estate scam." (Compl., Ex. B.) Second, is the email sent to Truist Bank shortly thereafter, with the subject line reading: "REAL ESTATE WIRE FRAUD-$66,484.74." (*Id.*, Ex. C.) Third, is another email sent to Truist Bank, where BankUnited asserts

5

that "Thurston falsified the documents, 'Owner's Affidavit: No Deed of Trust', indicating there was no additional liens or loans to be paid on this property and there was." (*Id.* ¶ 13, Ex. D.) Thurston alleges that all of these statements were "demonstrably false" and that they accuse her of committing "a crime involving moral turpitude for which, if true, she could have been indicted and punished." (Compl. ¶¶ 26, 28.)

In its motion to dismiss, BankUnited relies heavily on the affidavit signed by Thurston, essentially arguing that is serves as a "silver bullet" that defeats her defamation claim. However, the court is unconvinced. Based on the allegations contained in the complaint, it is not clear that the affidavit contained any false statement. It was signed on January 11, 2024, and states: "Owner does not have a loan which is secured by this real estate, so there are no loans to be paid with the proceeds from settlement." (Owner's Affidavit, Dkt. No. 7-1.) The Certificate of Satisfaction was prepared by BankUnited's own customer, Pike Title, and indicated that the lien was paid in full and released on January 9, 2024. (*See* Compl., Ex. E.) Although it wasn't recorded until January 12, 2024, it is unclear whether Thurston could rely on the unrecorded Certificate of Satisfaction when signing the affidavit. When evaluating the motion to dismiss, the court must draw all reasonable inferences from those facts in Thurston's favor. It is a reasonable inference that the affidavit is truthful.

Furthermore, even assuming that the affidavit was false because it was signed a day before Pike Title recorded the Certificate of Satisfaction releasing the lien, it does not prove that Thurston committed real estate fraud. It is true that a defamatory statement must be false, as BankUnited contends. But BankUnited's reliance on the affidavit goes too far. The affidavit does not make true that Thurston "falsified the documents" and that Thurston was part of a "real estate scam" that amounted to "real estate wire fraud." BankUnited argues that all

6

communications with Truist Bank "should be taken as[] one communication" and that, when taken as a whole, those statements amount to its belief of wire fraud. (Reply Br. Supp. Mot. to Dismiss 2–3, Dkt. No. 14.) And its "belief for wire fraud is *true*." (*Id.* at 3 (emphasis in original).) However, the court looks to the allegations contained in the complaint, and documents attached thereto, when evaluating the motion to dismiss. As mentioned above, Thurston alleges three separate communications that note: "CONFIRMED FRAUD – WIRE SENT AS A RESULT OF A REAL ESTATE SCAM" (Compl. ¶ 11, Ex. B); an email with the subject line reading, "REAL ESTATE WIRE FRAUD" (*Id.* ¶12, Ex. C); and an additional email that asserts she "falsified the documents, 'Owner's Affidavit: no Deed of Trust', indicating there was no additional liens or loans to be paid on this property and there was" (*Id.* ¶ 13, Ex. D). These statements do not merely express a belief that fraud occurred. Rather, they convey a definitive finding of fraud—or, at the very least, that is the reasonable inference the court draws from the complaint when viewed in Thurston's favor. Thurston alleges that these statements falsely accused her of committing "a crime involving moral turpitude for which, if true, she could have been indicted and punished." (*Id.* ¶ 28.) Drawing all reasonable inferences in Thurston's favor, the court finds that she has sufficiently alleged a defamation per se claim against BankUnited. Therefore, the court will deny BankUnited's motion to dismiss.[3]

---

[3] BankUnited also argues that the complaint fails to sufficiently allege a claim for punitive damages. (Br. Supp. Mot. to Dismiss 5–6.) However, this court has consistently held that punitive damages do not constitute an independent cause of action subject to dismissal under Rule 12(b)(6). *E.g.*, *Charles v. Front Royal Volunteer Fire & Rescue Dep't*, 21 F. Supp. 3d 620, 631 (W.D. Va. 2014); *Lynch v. A & A Exec. Transportation Servs., Inc.*, No. 3:24-CV-00081, 2025 WL 1085796, at *12 (W.D. Va. Apr. 10, 2025); *Facchetti v. Vest*, No. 5:15-CV-00049, 2016 WL 3920487, at *1–2 (W.D. Va. July 18, 2016). Moreover, even if punitive damages were a cause of action subject to dismissal at this stage, the complaint alleges sufficient facts to support a punitive damages award. "To recover punitive damages in a defamation case, the plaintiff must prove actual malice by clear and convincing evidence that the defendant either knew the statements he made were false at the time he made them, or that he made them with a reckless disregard for their truth." *Gov't Micro Res., Inc. v. Jackson*, 624 S.E.2d 63, 70 (Va. 2006) (citing *Ingles v. Dively*, 435 S.E.2d 641, 646 (1993)). Thurston alleges that BankUnited either knew the statements accusing her of real-estate wire fraud were false, lacked reasonable grounds to believe they were true, or acted negligently by failing to ascertain the truth. (Compl. ¶ 27.) Reading the complaint as a whole, accepting as true all well-pleaded facts, and drawing all reasonable inferences in Thurston's favor, the court finds that she has sufficiently alleged facts

## IV.  CONCLUSION AND ORDER

For the foregoing reasons, it is hereby ORDERED that BankUnited's motion to dismiss (Dkt. No. 6) is DENIED.

The Clerk is directed to send a copy of this memorandum opinion and order to all counsel of record.

Entered: December 15, 2025.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge

---

supporting punitive damages.  Accordingly, to the extent BankUnited seeks dismissal of Thurston's request for punitive damages under Rule 12(b)(6), the motion will be denied.